1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHENG YANG, | ) | 1:08cv1263 GSA |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | (Doc. 17) |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Sheng Yang ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

///

///

///

_____

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On September 9, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

1

## FACTS AND PRIOR PROCEEDINGS[2]

2    Plaintiff filed her initial application on February 7, 2005, alleging disability since March

3    1, 2002. AR 66-71.[3] After her application was denied initially and on reconsideration, Plaintiff

4    requested a hearing before an Administrative Law Judge ("ALJ"). AR 42-44, 49, 51-56. ALJ

5    Bert C. Hoffman held a hearing on October 4, 2007, and denied benefits on November 26, 2007.

6    AR 12-23, 234-255. On May 22, 2008, the Appeals Council denied review. AR 7-10.

7    Hearing Testimony

8    _____ALJ Hoffman held a hearing on October 4, 2007, in Fresno, California. Plaintiff

9    appeared with her attorney, Ms. Melissa Proudian. Plaintiff was 43 years old at the time of the

10   hearing. She was unsure of her height but she weighed 110 pounds. AR 239. She has nine

11   children between the ages of twelve (12) and twenty-two (22) years old. AR 239. Plaintiff lives

12   with all of her children and her husband. AR 239. Plaintiff's husband is disabled and does not

13   work. AR 239. He has problems with his hearing and is missing all of his fingers on one of his

14   hands. AR 239. Plaintiff's husband has been receiving SSI since coming to this country. AR

15   239.

16   Plaintiff attended one year of adult school after she arrived in the United States. AR 241.

17   She does not speak English and she has never worked in the United States. AR 241, 244.

18   Previously, Plaintiff took care of her husband and children. AR 240, 243. However, she has not

19   been able to do so for a long time because she has been sick. AR 240, 243. In October 2004,

20   Plaintiff became very depressed over the death of her son who was shot by a gang. AR 244.

21   Plaintiff spends some of her days in bed. AR 245-246.

22   Plaintiff has received treatment for her depression. AR 245, 246. She attended

23   individual sessions where Plaintiff discussed her symptoms including her headaches, her chest

24

25   ────────────

26   [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

27   [3] In his decision, the ALJ notes that Plaintiff filed her application for Supplemental Security Income benefits on August 4, 2005, and alleges the disability began on October 1, 2004. AR 15. However, the
28   administrative record also contains another application reflecting these earlier dates.

2

and back aches, low back pain, and depression.  AR 246.  At the sessions, she received medicine and then went  home.  AR 246. The medication made her drowsy and she fell asleep.  AR 246.

Plaintiff does not have any hobbies.  AR 248.  She suffers from depression frequently and has thoughts of suicide.  AR 248.  Plaintiff attempted suicide one time in the past year but her children told her not to do it again.  AR 248-249.

Plaintiff's headaches, chest pain, and back pain cause her the most severe pain. AR 249. When she is in pain, Plaintiff is unable to sit in a chair or stand.  AR 249.   Instead, she has to lay down.  AR 249.  She suffers from back pain and headaches constantly.  AR 250.

In the past, Plaintiff would cook for her family, but the children do the cooking since she has been sick.  AR 246, 250. Plaintiff is unable to clean because she gets dizzy and feels like falling. AR 250.  Her children also do the laundry and the grocery shopping.  AR 250.  Plaintiff goes grocery shopping with her children on occasion when she gets bored.  AR 251.  Plaintiff attended the Hmong New Year's celebration in the past. AR 251.   However, she  has not attended since she has been sick and applied for disability benefits.  AR 251.

Medical Record

From September 2002 until September 2007, Plaintiff was seen at the Medical Clinic of Dr. Long Thao for pain in her back, chest and head.  AR167-173; 220-233.  Over the course of several years, Plaintiff was prescribed Motrin and Tylenol. AR 167, 168, 172, 173,220, 223, 230. A  paranasal sinus survey performed on August 17, 2005, revealed significant nasal septal deviation.  AR 170.

From October 2004 until July 2007, Plaintiff was also treated at the Merced County Department of Mental Health for depression, headaches, back, and chest pain.  AR 174-200.  On October 21, 2004, a clinical assessment was performed.  198-200.   Plaintiff was diagnosed with major depressive disorder with moderate severity.  AR 200.  It was noted that Plaintiff was taking Ibuprofen, Acetaminophen and Cephalexin at the time of the evaluation.  AR 199.  Another clinical assessment was completed on November 5, 2004.  AR 194-197.  Plaintiff was again diagnosed with major depressive disorder, with moderate severity.  AR. 197.  During the

1  November 5, 2004 assessment, Plaintiff was given a global assessment of functioning ("GAF")

2  score of 45.[4]  AR 197.

3      In 2005, Plaintiff attended approximately twelve therapy sessions at the Merced County

4  Department of Mental Health  and obtained medications to treat her depression.  AR 179 - 193,

5  208-213.  During her treatment there, the staff noted that Plaintiff was depressed, uninterested in

6  life, and rarely participated in community activities.  AR 183, 191, 213**.**  Plaintiff was encouraged

7  by staff  to rely on her spouse and children for support and assistance when needed, but not to be

8  fully dependant on her family as it was not necessary.  AR 186, 193.  At various times in her

9  treatment in 2005, Plaintiff admitted some noncompliance taking her medications but indicated

10 that the prescribed medication helped when she took it.  AR 176, 180, 188.

11     On May 26, 2005, Plaintiff completed a Function Report and indicated that she helped get

12 the children ready for school, did light duty chores, prepared simple meals, taught her children

13 how to cook and clean, and had no problems taking care of her personal needs.  AR 91.  Plaintiff

14 also reported that she washed dishes, did the laundry, preformed light household chores, walked,

15 shopped twice a month, and visited with relatives, but did not go out alone.  AR 93, 94.  Plaintiff

16 indicated that her condition affected certain activities such as lifting, squatting, bending,

17 standing, reaching, walking, kneeling, talking, hearing, stair-climbing, remembering, completing

18 tasks, concentrating, understanding, following instructions, and using her hands.  AR 95.

19     On May 29, 2005, Steven C. Swanson, PhD, a clinical psychologist, evaluated Plaintiff at

20 the request of the state agency. AR 147-151. Dr. Swanson conducted a clinical interview during

21 which Plaintiff "reported that she [was] independently able to conduct all activities of daily

22 living" including bathing and dressing herself, doing household chores, preparing simple meals,

23 shopping, doing the laundry, and using public transportation. AR 148.  She also reported that she

24 watches television, listens to music, takes walks, and interacts with a few friends.  AR 148.

25

26
27     [4]  The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the
individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of
Mental Disorders* 30 (4th ed. 2000) ("DSM IV").  A GAF between 41 and 50 "is characterized by serious symptoms
28 (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social,
occupational or school functioning (e.g. no friends, unable to keep a job)."  DSM-IV at 32.

Plaintiff reported that the main reason she has not worked since coming to the United States was because of her illiteracy and her inability to speak English.  AR 148.  Plaintiff reported intermittent pain in her back and periodic headaches. AR 148.

No written psychological tests were completed during Dr. Swanson's evaluation. However, a mental status examination revealed that Plaintiff was fully oriented to time, place and situation, exhibited a full range or emotions, and in general, her mental status was within normal limits.  AR 149.  Plaintiff reported having a headache, back pain, and depression on the day of the testing and indicated that she feels "the same" way on most days.  AR 149.  Plaintiff's intelligence was assessed in the low average range.  AR 149, 150.  Her mood was euthymic to euphoric.  AR 149.  Plaintiff denied hallucinations or suicidal or homicidal ideations.  AR 149.

Dr. Swanson diagnosed with "rule out adjustment disorder with depressed mood" and assigned a GAF of 70.[5]  AR 150.   Dr. Swanson opined that Plaintiff was capable of maintaining concentration and relating appropriately to others in a work setting, as well as understanding, carrying out, and remembering simple instructions.  AR. 150.

On June 7, 2005, Dr. Joseph Schnitzler, M.D., a state agency psychiatrist, reviewed Plaintiff's medical records and determined that she did not have a medically determinable mental impairment.  AR 44, 156.  This finding was approved on June 23, 2005, by Dr. Marshall Gollub, M.D., a state agency doctor (AR 161-162); and on September 22, 2005, by G. Johnson, M.D., a state agency doctor (AR. 157-160).

On June 11, 2005, Plaintiff was evaluated by Dr. James Nowland, Jr., M.D., at the request of the state agency. A.R. 152- 156.   Plaintiff complained of weakness and fatigue for three years.  AR 152.   Plaintiff stated that she has trouble sleeping at night but sleeps all day. AR 152.  She gets some relief for medicine that she takes for depression.  AR 152.   Plaintiff reported that she stays at home and does not do anything.  AR. 152.  Dr. Nowland diagnosed depression and reported that Plaintiff could stand and/or walk eight hours per day, she could sit for an unlimited

---

[5] A GAF of 61-70 indicates "mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social occupational, or school functioning (e.g. occasional truancy or theft within household), but generally functioning pretty well, has some meaningful interpersonal relationships."  Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, 1994 (DSM-IV), 32.

1   period in an eight hour day, and she could be expected to lift and carry fifteen pounds frequently

2   and forty pounds occasionally.  AR 154.

3   In a Function Report completed on August 29, 2005, Plaintiff indicated that she stayed

4   home all day, could take care of her personal needs, walked outside the house alone, and shopped

5   with her daughter one or two times per week. AR 113-114, 116.   She also reported that she had a

6   depressive disorder, mental retardation, a hearing loss, and was unable to communicate in

7   English.  AR 116.  Plaintiff indicated that her condition effects certain activities including, but

8   not limited to, lifting, squatting, bending, standing, walking, kneeling, talking, remembering,

9   completing tasks, concentrating, understanding, and following instructions.  AR 118.

10  In a Pain Questionnaire, completed on September 7, 2005, Plaintiff indicated that she

11  could only walk one block, stand for one-half hour, sit for one hour, but could do light

12  housekeeping chores such as dusting, and cooking without assistance.  AR 133.   In a Fatigue

13  Questionnaire submitted the same day, Plaintiff indicated that she goes outside and walks around

14  the house everyday, did not do chores or wash dishes, did not nap, and could not concentrate.

15  AR. 129-130.

16  In July 2006, Plaintiff's son was killed in a gang-related shooting. AR 205.  For a period

17  of time after her son's death, Plaintiff's condition worsened. AR 213, 216.  Plaintiff resumed

18  therapy sessions at the Merced County Department of Mental Health from October 2006 until

19  January 2007. AR 208-219.   However, in December 2006, a mental status exam revealed that

20  Plaintiff's affect was appropriate and her memory and judgment was intact. AR 211.  In January

21  2007, Plaintiff admitted to her therapist that although she was still grieving, she had returned to a

22  normal level of functioning around the house, with some assistance from her family members.

23  AR 208.  In April 2007, Plaintiff's psychiatrist recommended decreasing her medication to a

24  minimum effective dose. AR 206.   A July 2007 progress note indicates that Plaintiff felt that her

25  medication was effective for dysthymia.  AR 203.  At that time, Plaintiff indicated that she did

26  not wish to decrease or discontinue her medications.  AR 203.  Her psychiatrist expressed his

27  belief that this desire was related to Plaintiff's ongoing application for SSI benefits.  AR 203.

28  ///

1          ALJ's Findings

2          The ALJ determined that Plaintiff had not engaged in substantial gainful activity since

3   she had never worked in the United States.  AR 17.  Although the ALJ determined that Plaintiff

4   had dysthymia, a severe impairment, he nonetheless found that this severe impairment did not

5   meet or equal any listing impairments resulting in a disability finding.  A.R. 17-18.  Based on his

6   review of the medical evidence, the ALJ determined that Plaintiff retained the residual functional

7   capacity ("RFC") to perform a full range of work at all exertional levels but was limited to

8   simple repetitive tasks.  AR 18.  The ALJ found that Plaintiff had no relevant past work. AR 20.

9   Because Plaintiff could follow simple instructions, respond appropriately to usual work

10  situations, and deal with changes in a work setting, Plaintiff was capable of performing unskilled

11  work and could perform jobs that exist in significant numbers in the national economy.  A.R. 20-

12  21  Based on these factors, the ALJ concluded that Plaintiff was not disabled within the meaning

13  of the Act.

14                                    **SCOPE OF REVIEW**

15          Congress has provided a limited scope of judicial review of the Commissioner's decision

16  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

17  the Court must determine whether the decision of the Commissioner is supported by substantial

18  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

19  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

20  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

21  reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

22  401.  The record as a whole must be considered, weighing both the evidence that supports and

23  the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

24  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

25  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

26  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

27  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

28

1  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th
2  Cir. 1987).

3                                                  **REVIEW**

4          In order to qualify for benefits, a claimant must establish that he or she is unable to
5  engage in substantial gainful activity due to a medically determinable physical or mental
6  impairment which has lasted or can be expected to last for a continuous period of not less than 12
7  months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he or she has a physical or
8  mental impairment of such severity that she is not only unable to do her previous work, but
9  cannot, considering his or her age, education, and work experience, engage in any other kind of
10  substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882
11  F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v.*
12  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

13         In an effort to achieve uniformity of decisions, the Commissioner has promulgated
14  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20
15  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found
16  that Plaintiff: (1) had not engaged in substantial gainful activity ; (2) did have an impairment,
17  dysthymia, that is considered "severe" based on the requirements in the Regulations (20 CFR §§
18  416.920(c)); (3) does not have an impairment or combination of impairments which meets or
19  equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR §§
20  416.920(d), 416.925 and 416.926); (4) had not worked in the past yet had a residual functional
21  capacity to perform a full range of work at all exertional levels but was limited to simple
22  repetitive tasks; and (5) that Plaintiff was capable of performing unskilled work and could
23  perform jobs that exist in significant numbers in the national economy. AR 17-21.

24         In reaching these conclusions, the ALJ found that although Plaintiff's condition could be
25  expected to produce some symptoms, Plaintiff was not entirely credible regarding the intensity,
26  persistence, and limiting effects of those symptoms.  AR 18.  The ALJ also gave more weight to
27  Dr. Swanson, the state agency consultative physician, rather than to the state agency non-
28  examining physicians.

                                                       8

1    Here, Plaintiff argues that the ALJ's residual functional capacity assessment lacks

2  substantial evidence because the ALJ gave great weight to the opinion of Dr. Swanson to support

3  a non-disability finding, but only vaguely referred to records from the Merced County

4  Department of Mental Health.  Furthermore, the ALJ failed to properly evaluate Plaintiff's

5  subjective complaints of pain.

6                                              **DISCUSSION**

7          Dr. Swanson's Report

8          Plaintiff argues that the ALJ should have contacted the treating psychiatrist at the Merced

9  County Department of Health to address functional limitations before relying on Dr. Swanson's

10  report.  However, a review of the record demonstrates that Plaintiff's argument is misplaced.

11          In general, it is the duty of the claimant to prove to the ALJ that she is disabled.  20

12  C.F.R. § 404.1512(a).  To this end, she must bring to the ALJ's attention everything that supports

13  a disability determination, including medical or other evidence relating to the alleged impairment

14  and its effect on her ability to work.  *Id.*  For his part, the ALJ has the responsibility to develop "a

15  complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical

16  reports."  20 C.F.R. § 404.1512(d).  If this information fails to provide a sufficient basis for

17  making a disability determination, or the evidence conflicts to the extent that the ALJ cannot

18  reach a conclusion, he may seek additional evidence from other sources.  20 C.F.R. §§

19  404.1512(e);  404.1527(c)(3), see also *Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir.2001).

20          However, the ALJ's obligation to obtain additional evidence is triggered only "when the

21  evidence from the treating medical source is inadequate to make a determination as to the

22  claimant's disability."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Tonapetyan v.*

23  *Halter*, 242 F.3d 1144, 1150 (9th Cir.2001) (holding that ALJs have a duty fully and fairly to

24  develop the record when the evidence is ambiguous or "the record is inadequate" to allow for

25  proper evaluation of the evidence). When the ALJ finds support in the record adequate to make a

26  determination regarding the claimant's disability, he does not have a duty to contact the doctors."

27  *Bayliss, v. Barnhart*, 427 F. 3d 1211, 1217 (9th Cir. 2005).

28

As a preliminary matter, Plaintiff was represented by counsel who made no efforts to add more information to the record which undermines Plaintiff's argument that the record was ambiguous.  AR 252-254.  Moreover, although Plaintiff argues that the records from the Merced County Department of Mental Health provided no information about functional limitations, there was information regarding the Plaintiff's level of functioning within the record which the ALJ referred to.  For example, the ALJ noted that Plaintiff had been assessed and treated at the Merced County Department of Mental Health for dysthymia and was given a GAF of 45.[6]  AR 17, ¶ 1; 196-197, 200.  However, the ALJ also gave specific reasons for rejecting the GAF including the fact that Plaintiff was a non-English speaking person, with limited education, and no previous work experience, which are factors by themselves that could result in a generally low GAF score. AR 20 ¶ 2; 214.

Similarly, there was other evidence in the record related to Plaintiff's level of functioning.  For example, the ALJ relied on Function Reports that Plaintiff had completed during the time she was treated at the Merced County Department of Mental Health as part of his analysis.  AR 18-20, 91, 93-95, 113-114, 116, 129-130, 133.   Further, the ALJ clearly indicated the weight he gave to all of the evidence in the record when he gave little weight to the state agency psychiatrists because "the record now contains additional medical evidence that establishes that the [Plaintiff's] impairment and resulting limitations were actually more severe than they may have appeared at the time."  AR 20.

Upon a  complete evaluation of the evidence, the ALJ determined that the record was adequate to make a determination and considered Dr. Swanson's report with the other evidence in the record.  Here, substantial evidence exists that Plaintiff is not disabled and that Plaintiff is limited to simple repetitive tasks which do not prevent her from performing unskilled work.  The ALJ properly relied on Dr. Swanson's report, a consultative examiner, who opined that Plaintiff could "maintain concentration or relate appropriately to others in a job setting," "understand, carry out, and remember simple instructions," and "respond appropriately to usual work

---

[6] Plaintiff was also given a GAF of 40 during a clinical assessment at the Merced County of Mental Health on November 9, 2006.  AR 214.

1    situations." AR 150.  *Tonapetyan v. Halter*, 242 F. 3d at 1149 (a consultative opinion alone

2    constitutes substantial evidence, because it rests on its own independent examination of the

3    [claimant]). Under these circumstances, the ALJ had no duty to further develop the record.  The

4    ALJ conducted a thorough review of the entire record and correctly assessed the Plaintiff's

5    functional capacity and her level of disability which is supported by substantial evidence.

6              Credibility

7    _____Plaintiff argues that the ALJ failed to set forth legally sufficient reasons for rejecting

8    her subjective complaints.

9              The ALJ is required to make specific findings assessing the credibility of plaintiff's

10   subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  "An ALJ is

11   not 'required to believe every allegation of disabling pain' or other non-exertional impairment,"

12   *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted).  In rejecting the

13   complainant's testimony, "the ALJ must identify what testimony is not credible and what

14   evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

15   1996) quoting *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir.

16   1988)).  "An ALJ may reject a treating physician's opinion if it is based "to a large extent" on a

17   claimant's self-reports that have been properly discounted as incredible".  *Tommasetti v. Astrue*,

18   533 F. 3d 1035, 1041 (9th Cir. 2008) citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595,

19   602 (9th Cir.1999).

20             In making this determination, the ALJ conducts a two-step analysis to assess subjective

21   testimony.  Under step one, the claimant "must produce objective medical evidence of an

22   underlying impairment" or impairments that could reasonably be expected to produce some

23   degree of symptom.  *Tommasetti v. Astrue*, 533 F. 3d at 1039.  If the first step is met and there is

24   no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

25   severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

26   *Id.*  Factors the ALJ may consider in weighing a claimant's credibility include "(1) ordinary

27   techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

28   statements concerning the symptoms, and other testimony by the claimant that appears less than

candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* citing *Smolen v. Chater*, 80 F. 3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d at 959.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*

> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

After setting forth the applicable standards for evaluating objective medical evidence and reports of pain , the ALJ first noted that Plaintiff had described participating in daily activities that were inconsistent with her claims of total disability. For example, Plaintiff told Dr. Swanson that she was able to bathe and dress herself, do household chores, prepare simple meals, shop, do laundry, and make use of public transportation. AR 19, 148. Plaintiff had also reported in a Function Report in May 2005, that she got her children ready for school, did light duty chores, prepared simple meals, taught her children how to cook and clean, could take care of her personal needs, could wash dishes, did laundry and household chores, walked, shopped twice a month, and visited with relatives. AR 19, 91, 93-94.

1    Plaintiff argues that the ALJ only picked out parts of the record to support a finding of

2    non-disability.  However, the ALJ clearly considered Plaintiff's testimony that she does not do

3    any laundry, household chores, or cook.  AR 20, 240, 243, 246, 250, 251. He also acknowledged

4    that in a Fatigue Questionnaire completed in September 2005, Plaintiff indicated that she did not

5    do chores, did not wash dishes, did not nap and could not concentrate. AR 19, 129-130.

6    However, the ALJ also noted that a Function Report also completed by Plaintiff in September

7    2005, contained contradictory information about her level of participation in daily activities

8    wherein Plaintiff indicated that she could do light housework such as dusting and cooking

9    without assistance. AR 19, 133.  Moreover, the ALJ acknowledged that in August 2005, Plaintiff

10   indicated in a Function Report that she stayed home all day, went outside the house, could take

11   care of her personal needs, walked out alone, and shopped with her daughter one or two times per

12   week.  AR 19, 113, 114, 116.  Although Plaintiff correctly notes that one does not need to be

13   utterly incapacitated in order to be disabled, an ALJ can look to daily living activities as part of

14   the credibility analysis.  *Burch v. Barnhart*, 400 F. 3d 676, 680 (9th Cir. 2005); " *Fair*, 885 F.2d

15   at 603; *see also Thomas*, 278 F.3d at 958-59.

16   The ALJ also properly discredited Plaintiff testimony based on her inconsistent

17   statements. AR. 20. The ALJ noted that at one point, Plaintiff indicated that she did not work

18   because of her inability to speak English and to read and write.  AR 20, 148, 194.  Later, she

19   indicated that she did not look for work because she needed to take care of her disabled husband.

20   AR 20, 243,  At another point, Plaintiff stated that she did not know how to drive and had a

21   mental illness that prevented her from obtaining a driver's license.  AR 20, 94.  She also stated

22   that she did not drive because of her depressive disorder, mental retardation, hearing loss, and her

23   inability to communicate in English. AR 20, 241-242.   The ALJ's reliance on these

24   inconsistencies, in conjunction with the Plaintiff's lack of prior work history, provides specific,

25   clear and convincing evidence that Plaintiff was not credible.  *Thomas v. Barnhart,* 278 F. 3d

26   947, 959 (9th Cir. 2002) (ALJ's reliance on Plaintiff's "extremely poor work history" as a basis

27   for adverse credibility determination regarding her inability to work was proper).

28

1    It is not the role of the Court to redetermine Plaintiff's credibility *de novo.*  Although

2    evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to

3    the claimant, if the ALJ's interpretation of evidence was rational, as here, the Court must uphold

4    the ALJ's decision where the evidence is susceptible to more than one rational interpretation.

5    *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

6    For the reasons stated above, the Court finds that the ALJ set forth sufficient reasons to

7    allow the Court to conclude that he did not arbitrarily discredit Plaintiff's subjective complaints.

8    Accordingly, Plaintiff's claim must be denied.

9                                   **CONCLUSION**

10    Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

11    evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

12    DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

13    Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Michael

14    J. Astrue, Commissioner of Social Security and against Plaintiff, Sheng Yang.

15

16

17    IT IS SO ORDERED.

18    **Dated:    October 15, 2009            /s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28